# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with Instagram account<br>"▮▮▮▮▮" (account number ▮▮▮▮▮▮▮▮) that is stored at<br>premises controlled by Meta Platforms, Inc. | ) ) ) ) ) ) ) Case No. MJ-22- 213<br><br>Filed under seal |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated by reference).

located in the  Northern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1349, 1344, 1704, 1708, and 1028A | Fraud conspiracy, bank fraud, stolen or reproduced mail keys or locks, mail theft, and aggravated identity theft |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*[signature]*

*Applicant's signature*

Michael Maxey, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: 12/09/2022

P. Bradley Murray  Digitally signed by P. Bradley Murray
Date: 2022.12.09 16:24:05 -06'00'
*Judge's signature*

City and state: Mobile, Alabama

P. Bradley Murray, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT " ▮ (ACCOUNT NUMBER ▮ THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | 22-MJ- 213 <br><br> **Filed Under Seal** |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Michael Maxey, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Postal Inspector with the U.S. Postal Inspection Service ("USPIS") and have been since August 18, 2017. During that time, I have worked on many investigations involving the theft of mail and various postal crimes. Before becoming an Inspector, I attended the Postal

Inspector Basic Training in Potomac, Maryland for three months and received training on criminal investigative techniques and practices. Before joining USPIS, I worked over seven years as a police officer in Mobile, Alabama. During that time, I spent over three years as a detective in the Mobile Police Department's ("MPD") Financial Crimes Unit, and I was also a federally deputized taskforce officer for the United States Secret Service where I investigated both federal and state fraud-related crimes. My duties as a Postal Inspector with USPIS include investigating of mail theft, mail fraud, wire fraud, bank fraud, identity theft, and aggravated identity theft, among other crimes. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All dates, amounts, and locations referenced in my affidavit are approximations.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1349 (fraud conspiracy), 1344 (bank fraud), 1704 (stolen or reproduced mail keys or locks), 1708 (mail theft), and 1028A (aggravated identity theft) have been committed by ▆▆▆ ▆▆▆▆ ("▆▆▆▆▆ ▆▆▆ ("▆▆▆▆ ▆▆▆▆ ▆▆▆▆ ("▆▆▆▆▆ and others. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in Attachment B.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

SEALED

**PROBABLE CAUSE**

5. Since December 2021, I have been investigating ▮▮▮ and several coconspirators for a counterfeit check-cashing scheme ("the scheme") involving the theft of mail from businesses within the Southern District of Alabama and the use of checks stolen from the mail to produce counterfeit checks, which are then deposited into the accounts of various accountholders who knowingly provide their debit/credit cards and PIN codes to be used in furtherance of the scheme for a share of the illicit proceeds.

6. On October 24, 2022, U.S. Magistrate Judge Katherine P. Nelson signed a federal search warrant for the contents of ▮▮ Instagram account "▮▮ (see ▮▮). For purposes of brevity, my affidavit fully incorporates the facts from the affidavit that I submitted in support of that search warrant. The results of that search warrant revealed hundreds of messages between ▮▮ and others discussing the scheme and messages exchanged in furtherance of the scheme.

7. On November 10, 2022, U.S. Magistrate Judge Katherine P. Nelson signed an additional federal search warrant for more contents of ▮▮ Instagram account "▮▮ (see ▮▮). For purposes of brevity, my affidavit fully incorporates the facts from the affidavit that I submitted in support of that search warrant. The results of that search warrant revealed hundreds of messages between ▮▮ and others discussing the scheme and messages exchanged in furtherance of the scheme. As discussed further below, I believe that the results of that search warrant and other information described below provide probable cause for a search warrant to obtain the communications from ▮▮ Instagram account, "▮▮ (account number ▮▮ requested herein.

8. ▇▇▇ and ▇▇▇ are unindicted coconspirators in a fraud scheme with ▇▇▇ that ultimately led to his indictment by a federal grand jury for Conspiracy to Commit Bank Fraud (18 U.S.C. § 1349), Bank Fraud (18 U.S.C. § 1344(1)), Possession of Counterfeited or Forged Securities (18 U.S.C. § 513(a)), and Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)) in June 2022. *See* Crim. No. ▇▇▇

9. I have identified ▇▇▇ and ▇▇▇ through, among other things, unindicted coconspirator testimony, bank surveillance video, and phone and location records. Specifically, in August 2022, I and another agent interviewed unindicted coconspirator ▇▇▇ ("▇▇▇ with her attorney present. ▇▇▇ admitted to providing her Regions Bank ("Regions") debit card and login information to a friend, ▇▇▇, so a counterfeit check, drawn on the Comerica Bank account (number ▇▇▇ of a Mobile-based victim business, into ▇▇▇ Regions account (number ▇▇▇ in February 2022 (*see* Figure 1 below).



*Fig. 1*.

10.  ▓▓▓▓ stated that shortly after the check was deposited into her Regions account, she had a telephone conversation with an unknown male, later identified as ▓▓▓▓ who drove to her residence with ▓▓▓▓ and demanded that ▓▓▓▓ follow them to Regions, located at 1 South University Boulevard, Mobile, Alabama 36608, to withdraw illicit proceeds from the fraudulently deposited check. After going to Regions, ▓▓▓▓ ▓▓▓▓ and ▓▓▓▓ then went to a nearby post office, located at 5551 Old Shell Road, Mobile, Alabama 36608, to purchase postal money orders with illicit proceeds of the fraud scheme. Review of Regions surveillance video showed ▓▓▓▓ making an $800.00 withdrawal of the illicitly gained funds from ▓▓▓▓ Regions account on February 9, 2022, and two of the postal money orders purchased

using the illicitly gained funds were made payable to ▮▮▮▮▮▮ and cashed (*see* Figures 2, 3, and 4 below).



***Fig. 2*** (Regions surveillance video of ▮▮▮▮▮▮ withdrawing illicit proceeds from ▮▮▮▮▮▮ account).

SEALED



*Fig. 3* (Postal money order payable to ▮▮▮▮▮ purchased with illicit proceeds of the scheme).



*Fig. 4* (Postal money order payable to ▮▮▮▮▮ purchased with illicit proceeds of the scheme).

7

SEALED

11. On May 11, 2022, two stolen and forged checks were deposited into ▉▉▉▉ Regions account (number ▉▉▉▉ One check was drawn on the Hancock Whitney Bank account (number ▉▉▉▉ of a Louisiana-based victim business (*see* Figure 5 below). The other check was drawn on the First National Bank account (number ▉▉▉▉ of a separate Louisiana-based victim business (*see* Figure 6 below). Both checks were stolen from the U.S. mail stream.



***Fig. 5*** (fraudulent check deposited into ▉▉▉▉ Regions account).

8

SEALED



*Fig. 6* (fraudulent check deposited into ▓▓▓▓ Regions account).

12. A review of ▓▓▓▓ Instagram account information revealed that ▓▓▓▓ and ▓▓▓▓ have communicated through the application in order to further the scheme. Specifically, on July 17, 2022, ▓▓▓▓ whose Instagram account name is "▓▓▓▓ (account number ▓▓▓▓ sent ▓▓▓▓ a picture of a hand holding a counterfeit check drawn on the Iberia Bank account (number ▓▓▓▓ of a Mobile-based victim business ("Victim-1") (*see* Figure 7 below). ▓▓▓▓ then asked ▓▓▓▓ why the check had a hold placed on it and whether money could be taken from Victim-1's account, and ▓▓▓▓ explained why a hold could be placed on the check/account, which prevented the funds from being withdrawn (*see* Figure 8 below).

9

SEALED



*Fig. 7* (image of counterfeit Victim-1 check sent by ▆▆▆▆ to ▆▆▆▆ via Instagram).



*Fig. 8* (Instagram messages between ▆▆▆▆ and ▆▆▆▆

10

SEALED

13. On July 12, 2022, U.S. Magistrate Judge Katherine P. Nelson signed a federal search warrant authorizing the search of ▇▇▇ residence (*see* ▇▇▇). For purposes of brevity, my affidavit fully incorporates the facts from the affidavit that I submitted in support of that search warrant. The results of that search warrant revealed ▇▇▇ to be in possession of scanners, printers, laptops, blank check stock, and additional counterfeit checks drawn on Victim-1's same account, which ▇▇▇ and ▇▇▇ were discussing five days later, as described above.

14. In sum, ▇▇▇ used his Instagram account "▇▇▇ (account number ▇▇▇ to facilitate the above-referenced fraud scheme as the messages, acquired from a review of ▇▇▇ Instagram account "▇▇▇ show. ▇▇▇ is directly linked to a fraud scheme involving ▇▇▇ and ▇▇▇ that dates back to at least December 2021. Based on the information set forth in this affidavit, I believe probable cause exists to obtain ▇▇▇ Instagram content from the account "▇▇▇ (account number ▇▇▇ from December 1, 2021, through August 1, 2022.

## BACKGROUND CONCERNING INSTAGRAM[1]

15. Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

SEALED

application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

16. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

17. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

18. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

19. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account,

SEALED

or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

20. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

21. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

22. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

23. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their

SEALED

devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

24. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

25. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

26. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

27. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with

"disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

28. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

29. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

30. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

31. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising

SEALED

identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

32. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

34. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

35. For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

36. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user

SEALED

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

37. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

39. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience,

SEALED

such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

40. Based on the forgoing, I request that the Court issue the proposed search warrant.

41. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Michael Maxey
Postal Inspector
U.S. Postal Inspection Service

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS __9th__
DAY OF DECEMBER 2022.

**P. Bradley Murray** Digitally signed by P. Bradley Murray
Date: 2022.12.09 16:37:33 -06'00'
_____
P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE

18

SEALED